# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| W&B SISTO SALES, LLC <br> an Ohio corporation, <br><br> Plaintiff, <br> vs. <br><br> AIM PRODUCTS, LLC, a Delaware <br> Corporation (d/b/a AIM SOLDER), <br> 25 Kenney Drive <br> Cranston, RI 02920 <br><br> and <br><br> AIM METALS & ALLOYS L.P., <br> a Canadian corporation (d/b/a AIM <br> ALLOYS & METALS L.P.), <br> 9100 Henri-Bourassa Blvd. East <br> Montreal, QC H1E 2S4 <br> Canada <br><br> Defendants. | Case No.     1:22-cv-245 <br><br> Judge: _____ <br><br> **COMPLAINT FOR MONEY DAMAGES** <br><br><br><br> **JURY TRIAL DEMANDED** |

      Plaintiff W&B Sisto Sales, LLC, by and through its undersigned counsel, hereby complains against Defendants AIM Products, LLC and AIM Metals & Alloys L.P. as follows:

## PARTIES

    1.    Plaintiff W&B Sisto Sales, LLC ("W&B") is a limited liability company organized under the laws of Ohio with its principal place of business in Cincinnati, Ohio. W&B is an independent sales representative firm engaged in promoting sales and soliciting orders for products manufactured and supplied by the companies it represents. At all times relevant to this action, W&B's only member, William S. Sisto, resided in this district in Cincinnati and was a citizen of Ohio.

    2.    Defendant AIM Products, LLC is a Delaware limited liability company with its

1

principal place of business in Cranston, Rhode Island. AIM Products, LLC does business under the name "AIM Solder" and is a wholly owned subsidiary of Defendant AIM Metals & Alloys L.P.

3. Defendant AIM Metals & Alloys L.P. is a private corporation organized under the laws of Canada with its principal place of business in Montreal, Quebec. Defendant AIM Metals & Alloys L.P. formerly did business under the name AIM Alloys & Metals L.P.

4. Defendant AIM Products, LLC and Defendant AIM Metals & Alloys L.P. (collectively, "AIM") manufacture metal products, and utilize independent sales representatives such as W&B to market and solicit orders for their products.

## JURISDICTION AND VENUE

5. Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a) because complete diversity exists between the parties, and the matter in controversy, exclusive of interest and costs, exceeds $75,000.00.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events or omissions giving rise to this action occurred in this District.

## FACTS COMMON TO ALL COUNTS

7. W&B worked as AIM's sales representative in a specified territory, promoting AIM's products and soliciting orders of AIM's products, for over eleven (11) years.

8. The relationship began on or about October 21, 2010, when W&B and AIM entered into a sales representative agreement whereby AIM appointed W&B as its sales representative to solicit business for AIM.

9. On or about January 20, 2014, W&B and AIM entered into the controlling Sales Representative Agreement (the "SRA"). Per the SRA, W&B served as AIM's sales representative

to solicit business for AIM in the territory comprised of "Ohio (less the branches of Trumbull in Warren and Youngstown, Robertson in Alliance, and Famous in Akron), Michigan, Eastern Indiana, and Kentucky." A copy of the SRA is attached as **Exhibit 1**.

10. Although AIM's Canadian corporation is the contracting party, at its direction W&B interacted with Defendant AIM Products, LLC as its point of contact for all business purposes during the period of representation.

11. The SRA superseded the prior sales representative agreement entered into by the parties. *See* Ex. 1, § 10.

12. At all times relevant, W&B invested substantial time, expense and effort actively marketing and promoting the sale of AIM's products. Through its efforts, W&B substantially increased sales of AIM's products.

13. In consideration for W&B's services, AIM agreed to pay W&B commissions at the rates spelled out in the SRA. Specifically, AIM agreed to pay W&B $0.40/lb. for sales of Lead-Free Solder, and $0.20/lb. for sales of Leaded Solder. *See* Ex. 1, p. 5.

14. On May 31, 2013, AIM's National Sales Manager, Daniel LeBlond, requested that W&B evaluate a potential opportunity with Oatey Co. ("Oatey"), noting that "this could prove to be a nice opportunity[.]" A copy of LeBlond's May 31, 2013 email is attached as **Exhibit 2**.

15. W&B arranged, attended, and facilitated the meeting between AIM and Oatey in late 2013. A copy of W&B's exchanges with AIM leading to the meeting is attached as **Group Exhibit 3**.

16. Following the meeting procured by W&B, AIM sold millions of dollars of solder to Oatey from 2014 to the present. AIM did not, however, advise W&B that these sales occurred.

17. W&B learned in late 2021 that AIM made these substantial sales to Oatey, and

failed to pay commissions to W&B on such sales.

18. When W&B approached AIM about the failure to pay commissions related to the Oatey sales, AIM's industrial business manager, Ron Sabourin, advised W&B that he would investigate the issue.

19. Thereafter, on a conference call on September 27, 2021, W&B asked AIM to provide sales reports in order to calculate commissions due to W&B. In response, Sabourin asserted for the first time that Oatey was a "house account" of AIM, and not commissionable to W&B. The conference call ended abruptly, lasting less than five minutes.

20. The next day, AIM's legal counsel, Bruce Carlini, sent a letter to W&B on September 28, 2021, purporting to terminate both the 2010 sales representative agreement and the SRA "effective immediately." A copy of Carlini's September 28, 2021, letter is attached as **Exhibit 4**.

21. On February 17, 2022, W&B sent demands to AIM via certified mail for unpaid commissions resulting from the Oatey sales. W&B's demand letters are attached as **Group Exhibit 5**.

22. On information and belief, AIM's sales of solder to Oatey are in excess of $1,000,000.

## COUNT I
## Breach of Contract

23. As Paragraph 23 of this Complaint, W&B adopts and incorporates Paragraphs 1 through 22 of this Complaint as though fully set forth herein.

24. W&B substantially performed all material obligations required of it under the SRA, and generated significant business and profits for AIM by successfully promoting the sales of its products.

4

25. W&B neither agreed to limit nor waived its right to receive commissions on orders it procured for AIM during the terms of the SRA.

26. AIM's sales of solder to Oatey are commissionable to W&B under the terms of the SRA.

27. Pursuant to the SRA, "[c]ommissions will be paid on or about the 10th of the second month following the month which the material is shipped and invoiced." *See* Ex. 1, § 3(A).

28. AIM failed and/or refused to pay W&B commissions due from sales to Oatey when they became due, or at any other time, thereby breaching the SRA. *See* Ex. 1.

29. Additionally, the SRA includes an implied covenant of good faith and fair dealing. In breach of that duty, AIM attempted to and did conceal from W&B monies it received as a result of W&B's efforts, and failed to properly compensate W&B.

30. As a direct result of AIM's breaches, W&B has incurred and will continue to incur significant damages, including but not limited to, unpaid commissions.

31. Due to the actions of AIM to conceal the actual sales and pricing, the precise amount of commissions due and owing to W&B cannot be computed by W&B without discovery. AIM, not W&B, is in possession of the documents and information necessary to determine the full amount of unpaid commissions. Such commissions due and owing, however, are believed to be in excess of $100,000.

32. W&B is also entitled to prejudgment interest in accordance with Ohio Rev. Code § 1343.03(A).

## COUNT II
### Violation of the Ohio Sales Representative Statute

33. As Paragraph 33 of this Count II, W&B adopts and incorporates Paragraphs 1 through 32 of this Complaint as though fully set forth herein.

34. The Ohio Sales Representative statute, Ohio Rev. Code § 1335.11 *et seq.* (the "Sales Rep. Statute"), protects independent sales representatives like W&B from a principal's refusal to pay commissions due, and enables such sales representatives to recover exemplary damages, attorneys' fees and costs when violated.

35. The Sales Rep. Statute defines "Commission" to mean "compensation accruing to a person for payment by another person, the rate of which is expressed as a percentage of the dollar amount of orders, sales, or profits." Ohio Rev. Code § 1335.11(A)(1).

36. The Sales Rep. Statute defines "Principal" as a corporation or other entity that engages in "[t]he business of manufacturing, producing, importing, or distributing one or more products for sale to customers who purchase products for resale or for consumption or utilization in the manufacturing process;" that "[u]tilizes one or more sales representatives to solicit orders for those products or orders for those services;" and that "[c]ompensates the sales representatives in whole or in part by commission." Ohio Rev. Code § 1335.11(A)(2).

37. The Sales Rep. Statute defines "Sales representative" in pertinent part as a limited liability company or other entity that "contracts with a principal to solicit orders for a product or orders for the provision of services and who is compensated, in whole or in part, by commission[.]" Ohio Rev. Code § 1335.11(A)(3).

38. Division (C) of the Sales Rep. Statute provides that, when a contract between a principal and sales representative is terminated, "the principal shall pay the sales representative all commissions due the sales representative at the time of the termination within thirty days of the termination and shall pay the sales representative all commissions that become due after the termination within thirteen days of the date on which the commissions become due." Ohio Rev. Code § 1335.11(C).

39. The Sales Rep. Statute further provides that "[a] principal who fails to comply with division (C) of this section or with any contractual provision concerning timely payment of commissions due upon termination of a contract with a sales representative is liable in a civil action for exemplary damages in an amount not to exceed three times the amount of the commissions owed to the sales representative if the sales representative proves that the principal's failure to comply with division (C) of this section or the contractual provision constituted willful, wanton, or reckless misconduct or bad faith." Ohio Rev. Code § 1335.11(D).

40. Moreover, "[i]f a principal receives a written demand for payment of the commissions owed to a sales representative that was sent by certified mail, the failure of the principal to respond to the written demand in writing within twenty days after the principal receives the written demand shall raise a presumption that the principal acted willfully and in bad faith. The prevailing party in an action brought under this section is entitled to reasonable attorney's fees and court costs." *Id.*

41. AIM manufactures, produces, imports, or distributes certain products for sale, contracted with W&B to solicit orders for its products, and agreed to compensate W&B by commission.

42. W&B contracted with AIM to solicit sales in exchange for commissions.

43. AIM violated the Sales Rep. Statute by failing to timely pay W&B commissions due and owing within 30 days of termination, or within 13 days after they became due following termination.

44. By letter sent via certified mail, W&B demanded payment of unpaid commissions from AIM. *See* Ex. 5.

45. AIM failed to respond to W&B's demand within twenty (20) days of receipt.

7

46. As of the date of filing this pleading, AIM owes W&B unpaid commissions believed to be at least $100,000.00, with the precise amount to be determined at trial.

47. W&B is entitled to recover all unpaid commissions due W&B, as well as exemplary damages on the unpaid commissions under the Sales Rep. Statute of three times the amount of commissions determined to be due and owing, plus attorneys' fees and costs.

## COUNT III
### Unjust Enrichment (Pled in the Alternative to Counts I & II)

48. As Paragraph 48 of this Count III, W&B adopts and incorporates Paragraphs 1 through 6 of the Complaint as though fully set forth herein.

49. If for any reason it is found that no valid or enforceable written contract governs the business relationship between W&B and AIM as to some or all of the relevant sales, then an implied contract exists between the parties in that W&B successfully solicited business for AIM induced by, and in justifiable reliance upon, AIM's promises to pay commissions consistent with the parties' prior dealings and course of conduct, and consistent with industry custom and practice.

50. W&B invested substantial efforts and incurred significant expense to solicit business for AIM, and W&B's dedicated sales efforts were met with great success to the benefit of AIM.

51. W&B has marketed AIM's products at its own expense with the knowledge and approval of AIM, and successfully promoted the purchase of AIM's products.

52. From the outset, AIM knew that W&B was providing its services with the reasonable and customary expectation that W&B would receive just compensation when its efforts resulted in sales. W&B reasonably trusted and relied upon AIM to fully and fairly compensate it for its successful sales efforts consistent with industry custom and practice.

53. As a direct and proximate result of the efforts of W&B to solicit business for it,

AIM has received significant quantities of orders for its products, which it accepted and shipped, and for which it was paid and will be paid millions of dollars.

54. AIM has now realized a substantial and unjust financial windfall by securing and keeping for itself all revenue and profits derived from the resulting sales of products, including the compensation justly due to W&B for its successful sales efforts. AIM has failed and refused to pay W&B the reasonable value of the services rendered by W&B, which conferred a significant and unfair benefit on AIM.

55. Retention by AIM of the income resulting from the work of W&B without compensating W&B for its role in generating that income is wrongful, unjust, and violates principles of equity and fairness. AIM has been enriched and is enjoying revenue that it would not have received but for the successful sales efforts of W&B, while W&B has not been compensated for the substantial business it secured for AIM.

56. Although AIM has received payment and will continue to receive payment for sales resulting from W&B's sales efforts, AIM has withheld and is continuing to withhold payment of the compensation due to W&B for those efforts without legal justification.

57. All of the foregoing acts and omissions have caused and will continue to cause W&B to incur damages in an amount to be determined at trial but believed to be in excess of $100,000.00.

**WHEREFORE**, Plaintiff W&B Sisto Sales, LLC respectfully requests the entry of judgment in its favor and against Defendants AIM Products, LLC and AIM Metals & Alloys L.P. as follows:

**AS TO COUNT I:** Plaintiff W&B Sisto Sales, LLC respectfully requests the entry of judgment in its favor and against Defendants AIM Products, LLC and AIM Metals & Alloys L.P.,

the entry of an order requiring Defendants to provide an accounting of all sales on which commissions are due and owing to Plaintiff through the present date, an award of damages in an amount to be computed after discovery believed to be in excess of $100,000.00, plus pre-judgment interest, costs, and for such other relief as this Court deems just and equitable.

**AS TO COUNT II:** Plaintiff W&B Sisto Sales, LLC respectfully requests the entry of judgment in its favor and against Defendants AIM Products, LLC and AIM Metals & Alloys L.P., the entry of an order requiring Defendants to provide an accounting of all sales on which commissions are due and owing to Plaintiff through the present date, and an award of three times the amount of all unpaid commissions, plus reasonable attorneys' fees, costs, pre-judgment interest, and such other relief as this Court deems just and equitable.

**AS TO COUNT III:** Plaintiff W&B Sisto Sales, LLC, respectfully requests the entry of judgment in its favor and against Defendants AIM Products, LLC and AIM Metals & Alloys L.P., awarding Plaintiff fair and just compensation for the sales of Defendants' products that resulted from Plaintiff's professional efforts, ordering Defendants to account for all sales on which commissions are justly due to Plaintiff through the present, plus pre-judgment interest, costs, and for such other relief as this Court deems just and equitable.

Respectfully submitted,

/s/ John H. Phillips
John H. Phillips (Ohio # 0043934)
Anthony B. Holman (Ohio # 0084130)
*Phillips Law Firm, Inc.*
9521 Montgomery Road
Cincinnati, OH 45242
Telephone: (513) 985-2500
Facsimile: (513) 985-2503
Email: jhp@phillipslawfirm.com
Email: abh@phillipslawfirm.com
*Attorneys for Plaintiff W&B Sisto Sales, LLC*

Of Counsel:

Andrew Johnson, Esq.
*Schoenberg Finkel Beederman Bell Glazer LLC*
300 S. Wacker Drive, Suite 1500
Chicago, IL 60606
Telephone: (312) 648-2300, ext. 249
Facsimile: (312) 648-1212
Email: Andrew.Johnson@SFBBG.com
(Pro Hac Vice to be submitted.)

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of the maximum number in this action as to all issues so triable.

                                                    s/ John H. Phillips
                                                    John H. Phillips (Ohio # 0043934)