Exhibit 1



## Sales Representative Agreement
## CONFIDENTIAL

Effective this 6th day of January, 2014, AIM Alloys and Metals L.P. (the "Company") and W & B Sisto Sales, LLC (the "Representative") agree to the following:

1. **APPOINTMENT:** The Company appoints the Representative, having its principal place of business at P.O. Box 30433, Cincinnati, Ohio 45230 USA, as its sales Representative to solicit orders for the Company's Products and from the Class of Purchasers defined in Exhibit A attached hereto within the Territory described in Paragraph 2. The Representative accepts this appointment subject to and upon the terms and conditions of this Agreement.

2. **TERRITORY** (excluding house accounts): Ohio (less the branches of Trumbull in Warren and Youngstown, Robertson in Alliance, and Famous in Akron), Michigan, Eastern Indiana, and Kentucky.

3. **COMPENSATION AND OTHER REMUNERATION:** The Company will pay the Representative, as total compensation for Representative's services under this Agreement, a commission on net sales, defined below, according to the attached Exhibit A.

   A. Net sales are defined as orders accepted by the Company for the Products and from the Class of Purchasers specified in Exhibit A, originating in the Territory, less returns, allowances, bad debts and all discounts, if any. Commissions will not be paid on taxes or freight charges. Commissions will be paid on or about the 10th of the second month following the month which the material is shipped and invoiced.

   B. The Representative acknowledges that the Company has retained other Representatives to sell certain of the Company's Products in the Territory to different classes of Purchasers, and the Representative further acknowledges and agrees that the Representative has no claim to compensation relating to the different classes of Purchasers.

   C. The Representative shall, at the request of the Company, assist the Company in the collection of any nature and kind.

   D. The Representative shall be solely responsible for travel and all other expenses of any nature and kind.

4. **ACCEPTANCE OF ORDERS:** All orders solicited by the Representative for and on behalf of the Company shall only be binding upon the Company when accepted by the Company at the office in Cranston, Rhode Island. The Company may reject any order in whole or in part, or accept returns or grant allowances at any time, for any reason whatsoever, at its sole discretion, without any responsibility or liability to the Representative.

5. **TERMS AND TERMINATION:** This Agreement may be terminated by either party upon thirty (30) days written notice. If the Representative becomes insolvent or bankrupt, totally disabled, breaches the Agreement, or dies, then in any such event, the Company may immediately and without prior notice whatsoever, terminate the Agreement by sending written notice of termination to the Representative by certified or registered mail. If



Sales Representative Agreement
CONFIDENTIAL

this Agreement is terminated for any reason whatsoever, the sole obligation of the Company to the Representative after the effective date of such terms and conditions of this Agreement are on orders solicited and accepted by Company in accordance with this Agreement prior to the effective date of such termination.

**5a. BLANKET ORDERS AND CONTRACTS:** Any and all commissions due to the Representative under "blanket orders" or "blanket contracts," such orders or contracts being entered into before termination of this Agreement, shall be payable to the Representative for a period of no longer than thirty (30) days following the termination of this Agreement.

**6. REPRESENTATIVE AS INDEPENDENT CONTRACTOR:** The Representative is an independent contractor and when representing the Company, will represent itself to others only as an independent contractor. The Representative has no right to bind the Company; to transact any business in the name of the Company; to make any agreements or arrangements for granting discounts; to give or extend guarantees or warranties; to accept returns of merchandise, or fix terms of sale, except as previously specifically authorised in writing by the Company.

The Representative will market the Products of the Company in accordance with the instructions of the Company, and the Company will not be responsible for any acts of the Representative inconsistent therewith.

The Representative shall indemnify and hold harmless AIM from all claims, demand actions, liabilities, suits or damages resulting from activities of the Representative pursuant to or in any way connected with this Agreement. AIM shall indemnify and hold harmless the Representative from claims, demand actions, liabilities, suits or damages resulting from activities of AIM pursuant to this Agreement.

**7. INVALIDITY:** The invalidity or non-enforceability of any provision of this Agreement in no way affects the validity or enforceability of any other provision.

**8. WAIVER:** The waiver by the Company of a breach of any provision of this Agreement by the Representative will not constitute a waiver of any subsequent breach by the Representative.

**9. MODIFICATION:** This Agreement can only be changed, modified, or discharged if agreed to in writing by both parties.

**10. ENTIRE AGREEMENT:** This Agreement supersedes any prior Agreement between the Company and the Representative. This Agreement shall not, however, affect the rights accrued by the Company or the Representative from any prior Agreement between them.

**11. APPLICABLE LAW:** This Agreement is governed by the laws of the State of Rhode Island.

**12. REPRESENTATIVE'S DUTIES AND OBLIGATIONS:** In addition to such other duties and obligations as are set forth in this Agreement, the Representative shall (i) devote his or her best efforts to the promotion of the Company's interests and the sale of its Products to customers within the Territory; (ii) solicit and encourage



**Sales Representative Agreement**
**CONFIDENTIAL**

the continued demand for Products by existing distributors and customers (collectively, "Customers") of AIM;

13. **NON-COMPETITION:** While this Agreement is in effect, the Representative shall not, directly or indirectly, market, sell or promote the sale of, or otherwise commercially deal in or with, any Products within or without of the Territory that will then be in competition with, or similar to, the Products.

14. **TRADEMARKS, TRADE NAMES, PROPRIETARY INFORMATION:**

   A. The Representative agrees (i) that he will solicit orders for the Products only under the Company's trademarks or trade names, and (ii) to promptly notify AIM of any infringement of any of the Company's trademarks or trade names in the Territory. The Representative acknowledges the Company's exclusive ownership of any and all of the Company's trademarks and trade names (whether registered or not) and agrees not to take any action inconsistent with the Company's ownership thereof.

   B. The Representative agrees that both during and after the term of this Agreement that shall keep secret and not make any direct or indirect commercial use or disclosure of any confidential, proprietary information of the Company relating to its business, operations or any of its Products, including, without limitation, information as to product design, product specifications, product costs, manufacturing methods, financial, or statistical information about the Company's marketing or sales efforts, its sources of supplies, list of customers, and contemplated business actions. The Representative shall disclose such information only to those persons who must have such knowledge in order to perform responsibilities hereunder and the Representative shall take all necessary precautions and use his best efforts to ensure that such persons will likewise keep secret and not make any direct or indirect commercial use of such information. The Representative shall, however, have the right, in accordance with the Company's express written instructions, to disclose during the term of this Agreement such information as may be reasonably required solely in connection with the Representative's services hereunder.



**Sales Representative Agreement**
**CONFIDENTIAL**

In Witness whereof, the parties hereto have caused this Agreement to be executed as of this 6st day of January, 2014.

**AIM Alloys and Metals L.P.**

Name: Dan LeBlond

Title: National Sales Manager

Signature: _/s/ Dan LeBlond_

Date: January 6, 2014

**Representative**

Company: W & B Sisto Sales, LLC

Name: William S. Sisto

Title: President

Signature: _William S. Sisto_

Date: 1/20/14



**Sales Representative Agreement**
**CONFIDENTIAL**

### EXHIBIT A

### PRODUCTS

a) <u>Plumbing Wire Solder / Bar Solder</u> – Silversol, Aquasol, Econosol, 95Sn/5Sb, 50Sn/50Pb

b) <u>Handy Block / Caulking Lead</u> – Jointed semi-spheres in ingot form

### CLASS OF PURCHASERS

a) Plumbing Wholesalers
b) Plumbing Contractors
c) Industrial Wholesalers
d) Industrial Contractors
e) HVAC Wholesalers
f) HVAC Contractors
g) Hardware Retailers
h) Roofing Wholesalers

### COMPENSATION / RENUMERATION

a) <u>Lead-Free Solder</u> (Silversol, Aquasol, Econosol, 95Sn/5Sb - all formats) - $0.40 US/lb

b) <u>Leaded Solder</u> (50Sn/50Pb - all formats) - $0.20 US/lb

c) <u>Handy Block / Caulking Lead</u> – $0.01 US/lb, or, the per lb price difference between the customer invoice price and the price quoted to W & B Sisto Sales, LLC, by AIM

WSS.