IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| W&B SISTO SALES, LLC, | : |
| *Plaintiff*, | : Case No. 1:22-cv-245 |
| v. | : Judge Jeffery P. Hopkins |
| AIM PRODUCTS, LLC, *et al.*, | : |
| *Defendants*. | : |

## OPINION AND ORDER

This Opinion reckons with a civil procedure classic: Does mere interaction within a state constitute purposeful availment of that state? In this case, an Ohio company, having done business with a Canadian company, seeks to hale into federal court in Ohio a Delaware subsidiary company on the sole, conclusory ground that the Delaware company, through its Canadian parent's facilitation, interacted with the Ohio company as the point of contact. Because the exercise of personal jurisdiction requires more than a glancing allegation that a non-Ohio defendant simply interacted with a plaintiff in Ohio, this Court is therefore obligated to—and does—holster the breadth of its jurisdictional reach.

\* \* \* \* \*

This action began on May 4, 2022 when Plaintiff W&B Sisto Sales, LLC's ("W&B") filed a Complaint seeking monetary damages for breach of contract, violation of the Ohio Sales Representative Statute, and unjust enrichment against Defendants AIM Metal & Alloys, L.P. ("AIM Metals"), a Canadian company, and its U.S. based subsidiary, AIM Products, LLC's ("AIM Products"), which operates out of the state of Rhode Island. Doc. 2. After the

lawsuit was instituted, AIM Products, the subsidiary, filed a Motion to Dismiss the Complaint (Doc. 13) (the "Motion") advancing three reasons why this Court ought to dismiss. First, the Complaint—in AIM Products' view—fails to allege sufficient facts to demonstrate that diversity of citizenship subject matter jurisdiction exists. Doc. 13, PageID 55. Second, AIM Products, a Delaware limited liability company, contends that it does not have the minimum contacts in the state of Ohio required for this Court to exercise personal jurisdiction over it. *Id*. And finally, according to AIM Products, even if the Court does have subject matter and personal jurisdiction over it, W&B has failed to state a claim upon which relief may be granted. *Id*. at PageID 56.

For the reasons explained below, the Court finds that it does not possesses jurisdiction over AIM Products. Accordingly, the Court **GRANTS** Defendant AIM Products' Motion to Dismiss *solely* as to AIM Products (Doc. 13), and the Complaint filed by Plaintiff W&B Sisto Sales, LLC (Doc. 2) against AIM Products is hereby **DISMISSED WITHOUT PREJUDICE**. The Complaint filed by Plaintiff W&B as to AIM Metal & Alloys, L.P. is not addressed in this Order and Opinion and shall proceed until it is so terminated or resolved.

I. BACKGROUND

W&B Sisto Sales is an Ohio-based limited liability company organized under the laws of Ohio with its principal place of business in Cincinnati, Ohio. Doc. 2, PageID 14. AIM Metals—not to be confused with its subsidiary, the other party in this case, AIM Products— is a private Canadian corporation organized under the laws of Canada with its principal place of business in Montreal, Quebec. *Id*. at PageID 15. AIM Products does business under the name "AIM Solder," but for our purposes, it will be referred to as AIM Products. *Id*.

According to the Complaint, AIM Products is a wholly owned subsidiary of Defendant AIM Metals. *Id*.

W&B is an independent sales representative firm engaged in promoting sales and soliciting orders for products manufactured and supplied by the companies it represents, including AIM Metals. *Id*. at PageID 14. The parent company—AIM Metals—and W&B entered into a sales representation agreement on or about October 21, 2010, whereby W&B agreed to market and solicit orders for metal products being manufactured and supplied by AIM Metals. *Id*. at PageID 14–15. In January 2014, the companies entered into a second controlling Sales Representative Agreement ("SRA"), whereby the companies further agreed that W&B would serve as AIM Metals' sales representative for "Ohio (less branches of Trumbull in Warren and Youngstown, Robertson in Alliance, and Famous in Akron), Michigan, Eastern Indiana, and Kentucky." Doc. 2-1, PageID 25. AIM Products is not a party to either of these agreements. *See id*.

As part of the arrangement, AIM Products, at its Canadian parent's direction, allegedly served as W&B's point of contact for all business purposes. Doc. 2, PageID 16. Unlike AIM Metals, a Canadian company, AIM Products is a Delaware limited liability company with its principal place of business in Rhode Island. *Id*. at PageID 14–15. According to the Complaint, prior to the signing of the controlling SRA in January 2014, Daniel LeBlond, AIM Metals' National Sales Manager, asked W&B to evaluate a potential sales opportunity with the Oatey Co. ("Oatey"). *Id*. at PageID 16. Representatives of W&B arranged, attended, and facilitated the meeting between AIM Metals and Oatey in late 2013. *Id*. Beginning in 2014 and continuing through 2021, and unbeknownst to W&B, AIM Metals allegedly sold millions of dollars worth of solder to Oatey. *Id*.

3

When W&B learned in late 2021 of AIM Metals lucrative sales deal with Oatey, W&B approached AIM Metals regarding those sales and its failure to pay W&B any commissions. *Id*. at PageID 16–17. Then, on September 27, 2021, AIM Metals and W&B held a conference call to discuss the potential commissions. *Id*. at PageID 17. But when asked to provide sales reports in order to calculate commissions allegedly due to W&B, AIM Metals asserted for the first time that Oatey was a "house account" and not commissionable to W&B. *Id*. Ultimately, AIM Metals refused to pay W&B any commissions predicated on the Oatey contract. *Id*.

On September 28, 2021, AIM Metals sent W&B a letter terminating both the October 21, 2010 and January 6, 2014 sales representative agreements that had been in place between the two companies for roughly eleven years. Doc. 2-4, PageID 34. Subsequently, on February 10, 2022, W&B sent AIM Metals a demand for unpaid commissions resulting from the Oatey sales deal. Doc. 2-5, PageID 35. And when its demand went unanswered, W&B filed the instant lawsuit against both AIM Metals and AIM Products on May 4, 2022. The Complaint asserts claims for breach of contract, violation of the Ohio Sales Representative Statute, and unjust enrichment. Doc. 2. AIM Products filed the present Motion on July 7, 2022 (Doc. 13), and W&B filed its opposition on August 11, 2022. Doc. 15. AIM Products filed its reply on September 8, 2022. Doc. 19. This matter is fully briefed and ripe for adjudication.

II.     STANDARD OF REVIEW

AIM Products seeks dismissal of the Complaint for lack of jurisdiction under Rule 12(b)(1) and for failure to state a claim for which relief can be granted under Rule 12(b)(6). Specifically, as noted, AIM Products argues that W&B failed to plead sufficient facts to show that diversity of citizenship exists and contends it does not have the minimum contacts in Ohio necessary to support personal jurisdiction. Doc. 13, PageID 55–56. AIM Products

further argues that the Complaint fails to state a claim upon which relief can be granted. *Id.* at PageID 56. The first question raised is on the issue of personal jurisdiction. Because jurisdictional issues precede consideration of the merits and because the Court concludes that they are dispositive here, we will only address jurisdiction in this Opinion. *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155–56 (2d Cir. 1993) ("Where, as here, the defendant moves for dismissal under Rule 12(b)(1) as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first[.]" (cleaned up)).

A challenge to the court's subject-matter jurisdiction under Rule 12(b)(1) can be either facial or factual. *Id.* "A *facial* attack … merely questions the sufficiency of the pleading." *Id.* The standard for whether a "complaint [] allege[s] jurisdiction adequately" is whether it "contain[s] *non-conclusory* facts which, if true, establish that the district court ha[s] jurisdiction over the dispute." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) (emphasis added). "When ruling on a motion to dismiss for lack of standing or a facial challenge to its subject-matter jurisdiction under Rule 12(b)(1), the district court must accept all material allegations of the complaint as true." *Phillips v. Trump*, No. 18-6341, 2019 WL 7372704, at *1 (6th Cir. Nov. 20, 2019).

"On the other hand, when a court reviews a … *factual* attack … no presumptive truthfulness applies to the factual allegations." *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325. And when reviewing a factual attack on jurisdiction courts may consider sources outside the pleadings. *Id.* ("[A] trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts."); *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) ("[T]he court may consider evidence outside the

pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits.").

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "[C]hallenges to standing are properly brought under Fed. R. Civ. P. 12(b)(1) for a lack of subject-matter jurisdiction." *Miller v. Collins*, No. 23-3191, 2023 WL 7303305, at *2 (6th Cir. Nov. 6, 2023). And when a defendant challenges the Court's jurisdiction under Rule 12(b)(1), "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986); *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002) ("[T]he plaintiff, as the party invoking federal subject matter jurisdiction, has the burden of persuading the court that all of the requirements necessary to establish standing to bring the lawsuit have been met."). Further, a dismissal under Rule 12(b)(1) is without prejudice because it "allows for the possibility of repleading the action to bring it within the subject matter jurisdiction of some court." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

### III. LAW AND ANALYSIS

#### A. Personal Jurisdiction

AIM Products contends that this Court lacks personal jurisdiction in several respects. First, the Complaint has failed to demonstrate that AIM Products falls within the Ohio Long-Arm Statute. Doc. 13-1, PageID 61. Second, the exercise of specific jurisdiction would be inappropriate in this case because the Complaint does not allege AIM Products "purposefully availed itself of the privilege of acting in Ohio." *Id*. at PageID 63. Third, the exercise of jurisdiction in this case would not "comport with traditional notions of fair play and substantial justice." *Id*. at PageID 65 (internal quotations and citations omitted).

### i. Overarching Principles of Personal Jurisdiction

"To determine whether personal jurisdiction exists over a defendant, federal courts apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996); *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) ("[t]he Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant"). A tribunal's authority to exercise personal jurisdiction over a defendant "depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor*, 592 U.S. at 358 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)). The focus of that analysis is "on the nature and extent of 'the defendant's relationship to the forum State.'" *Id.* (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal. San Francisco Cnty.*, 582 U.S. 255, 262 (2017)). That focus led to the recognition of two kinds of personal jurisdiction: general and specific. *Ford Motor*, 592 U.S. at 358. The difference between them is in the "nature of the [defendant's] contacts." *CompuServe, Inc.*, 89 F.3d at 1263.

General jurisdiction can be exercised "only when a defendant is essentially at home in the State." *Ford Motor*, 592 U.S. at 358 (internal quotation marks omitted). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb*, 582 U.S. at 262 (emphasis in original). In other words, the claim "need not relate to the forum State or the defendant's activity there; [the claim] may concern events and conduct anywhere in the world." *Ford Motor*, 592 U.S. at 358. However, "[o]nly a select set of affiliations with a forum

7

will expose a defendant to such sweeping jurisdiction." *Id.* (internal quotation marks omitted). Specifically, an individual "is subject to general jurisdiction in her place of domicile[,]" and a corporation is subject to general jurisdiction in "its place of incorporation and principal place of business." *Id* at 358–59.

Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Id.* at 359. The court's exercise of jurisdiction "must be both authorized by the forum State's long-arm statute and in accordance with the Due Process Clause of the Fourteenth Amendment." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016). The Sixth Circuit has established a three-part test for determining whether such jurisdiction may be exercised under the Due Process Clause:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007) (citing *Southern Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Regarding the first requirement (*i.e.*, authorization by the forum State's long-arm statute), the forum state in this case is Ohio. Ohio's long-arm statute is set forth in R.C. § 2307.382. Under Ohio's long-arm statute, a court may exercise personal jurisdiction over a person if the cause of action arose from at least one of nine categories set forth in the subsections of the statute's division (A). *See* R.C. § 2307.382(A).

In connection with the second requirement (*i.e.*, the exercise of jurisdiction in accordance with the Due Process Clause of the Fourteenth Amendment), the defendant "must take some act by which it purposefully avails itself of the privilege of conducting

activities within the forum State." *Ford Motor*, 592 U.S. at 359 (internal quotation marks omitted and alteration adopted). "The contacts must be the defendant's own choice and not random, isolated, or fortuitous." *Id.* (internal quotation marks omitted). "They must show that the defendant deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering into a contractual relationship centered there." *Id.* (internal quotation marks omitted). "Yet even then—because the defendant is not 'at home'— the forum State may exercise jurisdiction in only certain cases." *Id.* The claim "must arise out of or relate to the defendant's contacts with the forum." *Id.* (internal quotation marks omitted). "Or put just a bit differently, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (internal quotation marks omitted and alteration adopted). Finally, the actions of the defendant must be of such consequence that the exercise of jurisdiction over the defendant is reasonable. *Id*.

### ii. Ohio's Long-Arm Statute

Ohio's long-arm statute provides, in relevant part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
    (1) Transacting any business in this state;
    (2) Contracting to supply services or goods in this state….

R.C. § 2307.382(A)(1)–(2). When a claim is based upon a contract, courts have identified two important guideposts: "(1) if the defendant reached out to the plaintiff in the forum state to create a business relationship; and (2) whether the parties conducted their contract negotiations in the forum state or agreed on terms affecting the forum state." *Premier Prop. Sales Ltd. v. Gospel Ministries Int'l, Inc.*, 539 F. Supp. 3d 822, 828 (S.D. Ohio 2021) (collecting cases). "[M]erely directing communications to an Ohio resident for the purpose of negotiating

9

an agreement" or fulfilling a contract, "without more, is insufficient to establish that a defendant transacts business in the state." *Indus. Fiberglass Specialties, Inc. v. ALSCO Indus. Prods.*, No. 3:08-cv-351, 2009 WL 982805, at *4 (S.D. Ohio Apr. 13, 2009). "Rather, there must additionally be some continuing obligation that connects the nonresident defendant to the state or some terms of the agreement that affect the state." *Id*. (quoting *Shaker Constr. Grp., LLC v. Schilling*, No. 1:08-cv-278, 2008 WL 4346777, at *3 (S.D. Ohio Sept. 18, 2008)).

In its Complaint, W&B's sole allegation regarding AIM Products states:

> Although AIM's Canadian corporation [i.e., AIM Metals] is the contracting party, at its direction W&B **interacted** with Defendant AIM Products, LLC as its point of contact for all business purposes during the period of representation.

Doc. 2, PageID 16 (emphasis added). AIM Products asserts that W&B's use of the term "interacted" in the Complaint belies that company's actual involvement in the contract—or lack thereof. In other words, W&B's use of the word "interacted" demonstrates that, for whatever contact AIM Products had with W&B, that involvement never rose to the level of it having acted directly or as an agent for AIM Metals such that the company (*i.e.*, AIM Products) can be subject to a cause of action under Ohio's long-arm statute, which conditions the exercise of personal jurisdiction upon a defendant's *transaction* of business or *contracting* to supply services or goods within the state, not its mere interaction with the plaintiff. Doc. 13-1, PageID 61.

In response, W&B argues that AIM Products is simply the "US-based alter ego of its Canadian parent," AIM Metals. Doc. 15, PageID 87. Consequently, W&B claims that AIM Metal's actions are attributable to AIM Products, including AIM Metal's decision to enter into a contract with an Ohio based company for services that would take place partly in Ohio. *Id*. at PageID 87–88.

10

The Court is not convinced that W&B has alleged sufficient facts to show AIM Products is an alter ego of AIM Metals such that AIM Metal's actions are attributable to AIM Products. Here, W&B "has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). But the only support for W&B's contention in the entirety of the Complaint is its *sole* conclusory allegation that "AIM Products, LLC … is a wholly owned subsidiary of Defendant AIM Metals & Alloys L.P.[,]" which "direct[ed] W&B [to] interact[] with [Defendant AIM Products] as [W&B's] point of contact for all business purposes." Doc. 2, PageID 15–16.

As this Court has previously held in another case, "merely directing communications to an Ohio resident for the purpose of negotiating an agreement" or fulfilling a contract, "without more, is insufficient to establish that a defendant transacts business in the state." *Indus. Fiberglass Specialties, Inc. v. ALSCO Indus. Prods.*, No. 3:08-cv-351, 2009 WL 982805, at *4 (S.D. Ohio Apr. 13, 2009). "Rather, there must additionally be some *continuing obligation* that connects the nonresident defendant to the state or some terms of the agreement that affect the state." *Id*. (emphasis added). W&B identifies no such continuing obligation, and none can be found in the record presented to the Court. W&B's mere allegation that AIM Products facilitated the companies' business "interact[ions]" is not by itself a well-pled assertion that AIM Products transacts business or contracts to supply goods in the state of Ohio, or in any way acted as an agent for AIM Metals to undertake those very same actions.[1] Doc. 2, PageID 16.

---

[1] Although W&B relies upon an *alter ego* theory to support its claims for relief against AIM Products, (Doc. 15, PageID 87), the Court notes that W&B has not presented evidence of potential liability on a theory of express or implied/apparent agency, either. Ohio law has long since recognized that "[t]he relationship of principal and agent, and the resultant liability of the principal for the acts of the agent, may be created by the express

Ultimately, W&B has not alleged sufficient facts to demonstrate that AIM Products directly, or as AIM Metals' agent, transacted or contracted with W&B in Ohio to create a business relationship, or that the parties conducted contract negotiations in the state or agreed on terms affecting the forum state. For this reason alone, W&B's causes of action against AIM Products fail. While AIM Products admittedly may have been the point of contact between the two companies (a claim that is not substantiated by any evidence), there is no allegation that AIM Products was specifically involved in the Oatey transaction. The exhibits attached to W&B's Complaint show that the inquiry regarding Oatey came from Dan LeBlond, national sales manager for AIM Metals. Doc. 2-3, PageID 31–33. While the LeBlond email correspondences do show a Rhode Island business address and a website link presumably for AIM Products (*Id.*), this only demonstrates an association between the two companies, not the complete control W&B argues by claiming that AIM Products "is a wholly owned subsidiary" of AIM Metals. Doc. 2, PageID 15.

The Court is not blind to the realities of corporate structuring, but there is simply not enough in the Complaint for the Court to determine that AIM Products is an *alter ego* of AIM

---

grant of authority by the principal. Absent express agency, the relation may be one of implied or apparent agency." *Master Consolidated Corp. v. BancOhio Natl. Bank*, 61 Ohio St.3d 570, 574 (1991). The burden of proving that the agency authority exists rests upon the party asserting the agency. *See Scott v. Kindred Transitional Care & Rehab.*, 2016-Ohio-495, ¶ 15 (8th Dist.) (*citing Irving Leasing Corp. v. M & H Tire Co.*, 16 Ohio App.3d 191 (2nd Dist. 1984)). Here, W&B has not plausibly alleged an express grant of authority from AIM Metals to AIM Products for transacting business in Ohio or negotiating or entering into contracts to supply services or goods in Ohio, the existence of which could otherwise have resulted in liability pursuant to a theory of express agency. Furthermore, in this case, there is insufficient evidence in the record to support the existence of even an apparent or implied agency relationship between AIM Metals and AIM Products relative to the contract or SRA in dispute in this action. *See Briskey v. KAF Properties LLC*, 2019-Ohio-4563, ¶ 22 (5th Dist.) ("For a principal to be bound by the acts of his agent under the theory of apparent authority, evidence must affirmatively show the existence of an express agency relationship and: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.").

Metals. In order to pierce the corporate veil where a parent-subsidiary relationship is alleged, the plaintiff must demonstrate that "(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Dombroski v. WellPoint, Inc.*, 2008-Ohio-4827, ¶ 18 (citing *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274 (1993)). W&B has made no such showing.

Nor has W&B alleged sufficient facts to demonstrate that AIM Products conducted any business in Ohio. As an initial matter, AIM Products is not a party to the contracts at issue. The operative SRA is a contract between AIM Metals and W&B. Doc. 2-1, PageID 25. There is no direct mention of AIM Products, nor is it a signatory to the agreement. *Id.* at PageID 25–28. The Complaint contends that AIM Products "interacted with" W&B as the point of contact for all business purposes, but it fails to allege what specifically that entailed or how it related to the transaction of business in the state of Ohio. Additionally, there are numerous circumstances where Ohio would only be tangentially involved in interactions between AIM Products and W&B. For instance, if W&B contacted AIM Products to see if AIM Metals carried a certain product W&B wanted to sell to a client in Michigan, that arrangement would not have affected Ohio beyond the fact W&B resides in Cincinnati. And by its own terms, the SRA states that "[a]ll orders solicited by [W&B] for and behalf of [AIM Metals] shall only be binding upon [AIM Metals] when accepted by [AIM Metals] at the office in … *Rhode Island*[,]" *i.e.*, not Ohio. Doc. 2-1, PageID 25 (emphasis added). Simply put, W&B has failed to show that AIM Products took *any* steps to transact business or to contract

13

to supply goods in the state of Ohio. W&B has only alleged *interaction* with an Ohio corporation, which fails as a matter of law to bring AIM Products within the ambit of this Court's jurisdiction.

Consequently, the Court finds that W&B has failed to plead factual allegations sufficient to demonstrate that AIM Products falls under Ohio's long-arm statute.

### iii. Application of specific jurisdiction – Due Process

Even if AIM Products did fall under the Ohio long-arm statute, the Complaints fails to satisfy the requirements for specific jurisdiction. The Parties agree that this Court does not have general jurisdiction over AIM Products, but a review of the allegations presently before the Court fails to demonstrate that the Court possesses specific jurisdiction over AIM Products.

#### a. Purposeful Availment

In order to exercise personal jurisdiction over an out-of-state defendant, the Court must determine whether a defendant has purposefully availed themself of "the privilege of acting in the forum state or causing a consequence in the forum state." *Air Prods.*, 503 F.3d at 551. Purposeful availment is the "constitutional touchstone of personal jurisdiction[,]" and it exists where the defendant's contacts with the forum, "proximately result from actions by the defendant himself that create a substantial connection with the forum State . . . and where the defendant's conduct and connections with the forum are such that he should reasonably anticipate being haled into court there." *AlixPartners*, 836 F.3d at 550 (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002)) (internal quotation marks omitted). Purposeful availment exists where a party creates a continuing obligation in the state or where a business relationship is intended to be ongoing in nature. *MAG IAS Holdings, Inc. v.*

14

*Schmuckle*, 854 F.3d 894, 900 (6th Cir. 2017); *Air Prods.*, 503 F.3d at 551; *AlixPartners*, 836 F.3d at 550.

There is little doubt that AIM Metals has created a continuing obligation in Ohio by signing an agreement with an Ohio company that contemplates actions in Ohio (as well as other states). Doc. 2-1, PageID 25. However, as discussed previously, AIM Products is not a party to that contract. Moreover, the Complaint fails to allege what actions AIM Products undertook that were either generally or specifically directed at Ohio.

Plaintiff does not allege that AIM Products contracted to supply services or goods in Ohio. Plaintiff's Complaint expressly acknowledges that AIM Metals is the contracting party pursuant to the SRA, not AIM Products. Doc. 2, PageID 16. The SRA does not require AIM Products to do anything in Ohio, and in fact, does not even mention AIM Products. *See id.*, PageID 25–29. Because there has been no requisite showing of purposeful availment, the Court finds that it does not possess specific jurisdiction over AIM Products, and it need not address the other two prongs of the jurisdiction inquiry.

## IV. CONCLUSION

For the reasons stated, the Court **GRANTS** Defendant AIM Products, LLC's Motion to Dismiss Plaintiff's Complaint (Doc. 13), and **DISMISSES** the Complaint, (Doc. 2), *only* as to Defendant AIM Products, LLC **WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

December 27, 2024

Jeffery P. Hopkins
United States District Judge